Carr, J.
It seems to me, that the case is decidedly against the appellant.
Several objections to the decree, were taken in the argument. It was first contended, that this was not a fit case for equity. The bill being for a stock of negroes, which in the lapse of twenty years had increased very much, and were much scattered, the plaintiffs averred, that they could not without the aid of a discovery, ascertain the names, sexes and residence, of the slaves, so as to pursue their legal remedy. They also stated, that the defendants were *169 about carrying them beyond the jurisdiction of the court. If this had been supposed by the defendants colourable merely, they should have pleaded to the jurisdiction of the court. This court has sustained the jurisdiction in several cases of this sort. These allegations certainly saved the bill from a demurrer.
There seems to me, however, a much surer ground for the jurisdiction of equity. The bequest of these slaves, created a trust for the support and maintenance of a feme covert and her infant children: a trust, not to be discharged by a single act of the trustees, hut requiring their care and attention, during the lives of the husband and wife and the survivor. During all this time, the trustees were to apply the profits of the slaves to the support and maintenance of the testator’s daughter, her husband and children 5 and then the slaves with thoir increase were to be divided among the children. To mark his anxiety to keep these negroes not only beyond the controul of the husband but the wife also, the legal title, and the whole management of them, are given to the trustees; and they are to apply the proceeds of their labour, at their discretion, to the support of the cestuis que trust. This appears to me a, case peculiarly proper for the protection and superintendence of equity.
On the death of the testator, his executor selected the slaves. But the trustees, from tho first, declined to have any concern with them, and they went into the hands of the feme covert, her husband being in Europe. Can it be doubted, that equity would instantly have interfered, if any one as next friend either of the wife or children, had filed a bill, stating the refusal of the trustees to act, and praying the court to set up the trust, and preserve the subject, either by compelling the trustees to act, or by substituting others ? Can there be a subject more appropriate to equity, than to. preserve to the feme covert and her infant children, the bounty of the testator, and cause it to flow in the channel he had marked out for it ? And if equity would have interfered at first, if called on, is not tho call equally imperative *170 now ? The trust fund continues; the purposes for which . , the trust was raised continue. Nor, under the will, can the slaves be divided among the children, till the mother’s death. If the names and places of abode of all the slaves and their descendants could be discovered, so as to enable the plaintiffs, in the names of the trustees, to bring actions of detinue, and recover at law, the court of law could go no further. It could not execute the trust, or make one of the arrangements necessary to preserve the property, or appropriate the profits to the purposes intended by the testator. In equity, one suit embraces the whole subject; a decree for the recovery of the slaves; an account for the hires and profits; and, finally, when these points are adjusted, the whole trust fund may be committed to new trustees, with such directions as may ensure the due execution of the testator’s intention, and with leave to the parties interested to apply to tire court, in case any future negligence or abuse of the' trust should render it necessary. There is no force in the objection to the jurisdiction.
It was next contended, that the statute of limitations was a bar to the recovery. I think not. Of this statute I have heretofore had occasion to declare my opinion. I consider it a wise and salutary law, tending to the security of titles, the discouragement of litigation, the repose of fire community. I shall always be ready to give it a fair and full support : but to a case like this, I can never think that it does or ought to extend.
Courts of equity, not being within the words of tire statute, apply it by analogy. In doing this, they must exercise a sound discretion. The defendant Rankin bought the slaves from Verminet, and bought them for the life of Mrs. Verminet only, as his bill of sale shews. He acknowledges too, in his answer, “ that he was informed, at the time of his purchase, that the slaves, were held by the said Verminet, in right of his wife:" these are his words. Buying, then, with full knowledge, that Verminet had only a partial, qualified interest in the property, and this in right of his *171 wife, he is chargeable with notice of that right, and bought subject to it, whatever it might be. It is hardly possible to believe, that he did not inform himself of the actual state of she property: that were a course which no man of common sense would pursue in such a purchase. The conclusion is proper and necessary, that he did know the true state of Verminet's interest. And on this ground, the law implies notice, and charges him with all the consequences. Can the statute apply to protect such a purchaser, and enable him to bar the very right under which and subject to which he bought ? Can this be called adversary possession ? Does not the trust, which attached to the slaves the moment they were selected by the testator, follow them ? None will deny that it did, while Verminet held; and can a purchaser from him with notice, occupy higher ground ? Nor is this one of those constructive trusts, to which the statute of limitations is applied : there, the party takes possession in his own right and as owner, and is afterwards turned into a trustee, by matter of evidence and construction merely; here, Rankin took possession in subordination to Mrs. Verminet's right, and is as much bound by the trust, and as incapable of protection by the statute, as trustees the most directly and formally appointed.
The removal of the slaves also to a distant part of the state, and the sale of some of them to persons residing at a still greater distance, rendered it difficult, to a woman and children especially, to discover the place of their abode, so as to sue for them sooner; and thus the case of the appellees is brought within the saving of the 14th section of the statute of limitations.
The chancellor has dismissed the bill as to the purchasers from Rankin, and directed an account to be taken of the values of the slaves sold to them, and of their hires and profits; intending, no doubt, to decree the full amount of their values and profits, at the final hearing. We think, that so much of this order, as directs the account to be taken of the profits of the slaves sold, after the sale of them to the *172 purchaser's, is wrong; the true mode being to decree the amount for which the property was sold, and interest thereon, from the date of the sale, and profits only before the sales were made. The decree must be corrected in this particular ; but the appellant must pay the costs, the appellees being the parties substantially prevailing.
The court gives no opinion on the point which the chancellor reserved for future consideration.
The other judges concurred. The decree was corrected .in the particular mentioned by judge Carr, and as to all ■ tilings else affirmed.