Daniel, J.
The causes of error assigned by the appellants in these two cases are, with slight modifications adapted to the different relative positions of the partjes^ common t0 both. No inconvenience or confugjon bas resuited from their being heard together in this Court; and in stating the conclusions to which my mind has arrived in considering them, I do not deem it necessary to sever them. The grounds mainly relied on by the Sheppards in the Court below, and on which they still insist in this Court, as causes for reversing the decrees of the Chancellor in both cases, are: 1st, That a Court of Equity had no jurisdiction; 2d, Lapse of time and the- statute of limitations; 3d, That the deed under which the appellees claim, was upon its face fraudulent and void, passing no title; and that,, if it were not, the conduct of the trustees and the creditors, if any, was fraudulent in permitting the sale under the expeditions without resistance, and in suffering the purchasers to remain so long in possession of the property without asserting any claim to it, ór even giving notice that the property was the subject of a subsisting and unsatisfied trust.
Throwing out of view for the present, the questions arising from the delay in asserting the claims, and the objections made to the character of the deed, I cannot see that the records present, in either case, any grounds for relief, for which, the plaintiffs in the Court below might not have had a plain, adequate and complete remedy at law. The pleadings in an action of detinue or trover would, in each case, have resulted in the fair presentation for trial by a jury, of every issue affecting the title to the.property in controversy, which, in the state of facts disclosed by the records, any of the parties had a right to tender, for the consideration and judgment of any tribunal.. The amended bill in Turpin's case, it is true, charges that there was a fraudulent combination between Benjamin Haley, the grantor in the deed of *385 trust, and the appellants, John and Benjamin Sheppard ; and that the execution by Haley of his bonds to the Sheppards, the suing forth of the writs thereupon, the requisition of bail, the confession of judgments, the issuing and levying of the executions, the sale under them of the slaves embraced in the deed of trust, and the joint purchase thereof by the Sheppards, were but so many steps in furtherance of a design upon the part of all three to defeat the provisions of the deed, and to hinder and prevent the successful assertion of their claims by those entitled to indemnity and satisfaction out of the property in said deed conveyed. There is, however, no impeachment of the consideration of the bonds executed by Haley to the Sheppards; no suggestion that they were not given for value; no charge that the bonds or the judgments upon them were satisfied, either in whole or in part, at the date of the levy of the executions and sale under them ; no allegation, indeed, of any fads which might not consist with an honest purpose on the part of the Sheppards to procure, by means of the proceedings complained of, the payment and satisfaction of their claims respectively.
Waiving the consideration of the question, whether a mere charge of fraud, thus preferred, accompanied by specifications which do not import it, is to be regarded as well made, it is sufficient to observe on this head, that the Sheppards, in their joint and separate answer; expressly deny all fraud and combination; and state that their judgments and executions were obtained and issued without collusion, for debts fairly contracted and justly due ; that the sale was made publicly and fairly, and that they became the purchasers of the slaves at not only fair, but full prices; and no testimony is adduced that, in any important particular, contradicts the answer. The only witness who was examined in the case, Joseph C. Haley, is wholly silent as to any combination or collusion between the Sheppards and Benjamin Ha *386 ley, and indeed as to concert or agreement between them of any character whatever. He seems to have been examined mainly with a view to his detail of circumstancgg attending the sale under the executions, which (the coungei for the appellees argue) discredit its fairness, and tend to prove the existence of some improper understanding between the parties concerned. I see nothing in the testimony of the witness upon which to found such an inference. He states that he was at the sale, that John and Benjamin Sheppard bought all the slaves; that there were but few persons present at the sale, and among them some two or three negro traders, who finding out how things were going on, left shortly after the sale was commenced. The witness expresses no opinion,- and indeed is not called on to express any opinion, as to whether the slaves were sold at fair prices. If the appellees had regarded the sale as being made at a sacrifice, and hence as furnishing evidence of its being a'pretended and unfair transaction, they would have examined their witness Haley on that head, or have called to their aid some of the traders or other persons who were present. The fact that those whose business it was to speculate in such property, left shortly after the sale was commenced, is no proof that the slaves were selling too low, but rather the contrary. Had the property been selling for prices below the market value, they would in all probability have been the last instead of the' first, as it seems they were, to leave the sale; The witness proceeds to set forth with great particularity, the mode in which the sale was conducted. I do not deem it necessary to repeat his statements. If there are any circumstances in his minute description of the manner of the sale, calculated to excite a suspicion that the parties concerned in it were engaged in doing what they knew to be wrong, those circumstances are the confinement of the slaves, the great care with which they are brought out and watched and guarded during *387 the sale, and again remanded to their place of safe-keeping as soon as they were severally sold. These circumstances are certainly too weak, the conclusions to which they lead are too vague and indeterminate, to form the foundation of an imputation of fraud. It is not improbable that this vigilance of the parties may have been occasioned by some conduct of the slaves. It is not improbable that, having heard of the intended sale, and being dissatisfied with the anticipated change of ownership, the slaves may have manifested some purpose to escape, and thus have justified the steps complained of, as precautions, on the part of the serjeant or other parties interested, to prevent their doing so.
. I repeat, therefore, that I see nothing in the circumstances attending the sale, to justify the inference that it was unfair in itself, or the result of a fraudulent and corrupt agreement previously made between the parties concerned in it. Thus viewing the case, it seems to me to be brought fully within the influence of the principles decided by this Court in the case of Bowyer, &c. v. Creigh, &c., 3 Rand. 25. The cases, it is true, differ in one particular. In the case of Bowyer, &c. v. Creigh, &c., the suit was brought to enjoin and stop a sale under execution ; here the suit is brought after the sale is made, to recover the property sold, or its value. In other respects, at least in all the features that at all affect the question of jurisdiction, the resemblance between the two cases is perfect. In the case of Bowyer v. Creigh, Creigh and others, creditors of James Calwell, having obtained judgments against the latter, caused executions to be levied on property in the possession of their debtor. Whereupon, John B. Calwell and Bowyer filed a bill of injunction to stay the sale, upon the ground that the property levied upon had been conveyed by James to John B. Calwell as trustee in a deed of trust for the indemnity of Bowyer and others. The defendants having filed *388 their answérs, in which they charged that the deed was fraudulent, the injunction, was dissolved, an appeal taken to this Court, and the order dissolving the injunction apjrme(^ np0[1 the ground that the case was .not one proper for the jurisdiction of a Court of Equity. This Court decided that there was no ground for the interference of a Court of Equity between the two incumbrancers ; that the sale of the property of their debtor by the creditors, under their executions, could result in no injury to the rights of the trustee or cestuis que trust, for which there was not a plain and adequate remedy at law. In the case now under consideration, the Sheppards, claiming to be creditors of Haley, have obtained judgments; have levied their executions on slaves in the possession of their debtor; have become the purchasers of the property at the sale made under their executions ; and Turpin then files his bill, seeking to recover the property, alleging that it had been conveyed to him, before the issuing of the executions, by Haley, in a deed of trust for the indemnity of himself arid others. The Sheppards have answered, objecting to the jurisdiction, and impeaching the deed as fraudulent and void. What circumstance, on which to rest the jurisdiction of a Court of Equity, is there present in the case of Sheppards v. Turpin, which is not to be found in the case oí Bowyer v. Creigh ? Can a Court of Equity properly refuse relief to one praying its interposition to prevent a wrong, on the ground that a Court of Law may hereafter afford a remedy when the injury is complete, and yet extend it to another, who, complaining of a like wrong now done and perfected, has the present capacity to resort for an immediate redress to the same legal tribunal ?
To sustain the jurisdiction of a Court of Equity in this ease, would be to open wide the door to all the mischiefs pointed out by Judge Carr in delivering his opinion in the case of Bowyer v. Creigh. There would *389 be the same infringement of the salutary rule forbidding a resort to equity when the remedy at law is complete ; the same violation of the spirit and policy of the statute of frauds; the same unnecessary interference with the right of the citizen to have a speedy and simple trial of contested facts before a jury of the country. I am therefore of opinion that the objection made to the jurisdiction in the case of Turpin v. Sheppards, ought to have prevailed ; and I see no reason for coming to a different conclusion in the case of Stubbs’ ex’or v. Sheppards. Indeed it seems to me that the claim to the jurisdiction, is weaker in the latter case than in the former, inasmuch as all the allegations in the bill of Stubbs’ ex’or, on which the jurisdiction could be sustained, are positively denied, and no testimony whatever is taken to sustain them. It is true that the witness Joseph C. Haley, who was examined in the case of Turpin v. Sheppards, was also examined in the case of Stubbs’ ex’or v. Sheppards, but in the latter case he states nothing relating to the facts on which it is sought to found the jurisdiction; and there is no such connexion between the two cases as would authorize this Court to decide any question raised in the one upon testimony taken to be read in the other. The failure of the trustee Turpin, to prosecute with activity and diligence the suit he had commenced, whether proceeding from negligence or design, could give no right to the executor of Stubbs to commence in his own name a new suit in a Court of Chancery.
In the case of Ambler & al. v. Warwick & Co., 1 Leigh 195, this Court, though the jurisdiction was sustained by a majority on other grounds, decided that where the cestuis que trust in a deed of trust are seeking to recover the trust property from parties who have acquired possession of it since the execution of the deed, the mere failure or even the refusal of the trustee to institute the proper actions at law, would not of itself con *390 fer upon the cestuis que trust a right to resort to a Court of Equity for the recovery of the property, inasmuch as it would be competent for them to prosecute such actjong at ]aw themselves in the name of the trustee. It -¡s contended, however, by the counsel for the appellees as well in the case of Sheppards v. Stubbs’ ex’or, as in case °f Sheppards v. Turpin, that the Sheppards having acquired possession of the property under a title, which if good for any purpose, is subsequent in date to the conveyance of the legal title by the deed of trust, their title is to be regarded as altogether equitable, and has therefore been properly subjected to the cognizance of a Court of Equity; and they rely upon the case of Ambler v. Warwick, above cited, as authority for the proposition. The proposition does not in my opinion, derive any support from the decision made in that case. A brief examination of its leading features, will, I think, shew that no general principle can be deduced from it favouring the claim of jurisdiction in the cases now before us. In that case it appears that Robert Morriss having made a deed of trust for the security of Daniel Warwick Sf Co., and Daniel Warwick, sold subsequently to the deed of trust, five of the slaves embraced in it, to.wit: one to Ambler, one to Robertson, one to Chilton, and two to Burton. The Warwicks filed their bill setting forth the deed of trust, stating that all of the trust property except the five slaves aforesaid, had been sold, and the proceeds applied in part satisfaction of their demand; still leaving a large balance due to them under the deed of trust; that these slaves were in the possession of Ambler, Burton, Chilton and Robertson;. and praying that they should be decreed to deliver,them up to be sold in satisfaction of their debt. The four defendants abovenientioned all answered, admitting they were in possession of the slaves as charged, and setting forth that they had purchased respectively from Morriss, who they alleged, had been authorized by the Warwicks *391 to make the sales. One of the defendants, Chilton, also stated that he did not know that the state of the accounts between the Warwicks and their debtor had been truly represented, and called for proof. The Chancellor having made a' decree against the purchasers, in pursuance of the prayer in the bill, an appeal was taken to this Court: which consisting of four Judges, were on the first argument unanimous in the opinion to reverse the decree upon an objection made to the jurisdiction of the Court below. On a rehearing, however, Judges Coalter, Cabell and Carr, decided in favour of the jurisdiction. Judge Brooke, the President, still adhering to the opinion of the Court first expressed. From this imperfect statement of the case, (which, however,'exhibits the material facts touching the question of jurisdiction,) it will be seen there are several important features by which it may be distinguished from those now under consideration. The defendants Ambler, Burton, Chilton and Robertson, wére purchasers, not under executions levied upon the trust property, but purchasers from the grantor in the deed: a deed, the legal validity of which, they did not in any manuer impeach'. They each also held portions of the trust property by several and distinct purchases; the titles conferred by which, however, all rested on the same state of facts. Under these circumstances the majority of the Court said, that to refuse the jurisdiction would be to subject the plaintiffs to four several actions at law in the name of the trustee, to be followed by as many suits in equity by the purchasers to assert their equitable titles. Upon the latter ground, I understand the two Judges who assigned the reasons for their change of opinion, as mainly resting the jurisdiction ; for whilst they shew that other considerations had their influence, they are both clear in the expression of the opinion, that to prevent the multiplicity of actions which would ensue as the consequence of denying the jurisdiction, was of itself rea *392 son sufficient for sustaining it. To hold that the case of Ambler V. Warwick, is authority for the jurisdiction of equity in the cases before us, would be to hold that Qoul.t tended by that decision to overrule the case Bowyer v. Creigh; an inference which, is not only not warranted by any of the remarks made by the Judges in deciding the first mentioned case, but directly opposed to what they did say; for Judge Coalter in noticing the argument of the appellant’s counsel, that to sustain the jurisdiction would be to run counter to the opinion of the Court expressed in Bowyer v. Creigh, observes “ In Bowyer v. Creigh, the defendants claimed against the trustee and cestuis que trust, and asserted a legal right against the deed which they were entitled to vindicate exclusively in a Court of Law. And besides, the interference of a Court of Equity in such a case would have counteracted the policy of the statute of frauds, and of the statute authorizing a creditor to enforce the sale of property taken in execution, of which the title is contested, by indemnifying the sheriff.”
The reasoning of the Court in the case of Bowyer v. Creigh, is also strong, if not conclusive, to shew that the plea of the statute of limitations ought to have prevailed in both of the cases before us; for if the claim of the Sheppards to the property in controversy is to be regarded as the assertion of a legal title, and their possession under the purchase made at the sale under the executions, as adverse to those claiming under the deed of trust, there is nothing to deprive them of the right to insist on, the statute as a protection; inasmuch as a Court of Equity is equally bound with a Court of Law to apply it in all cases where the state of facts are such as would sustain the defence in an action at law. It seems to me that the defence resting on the statute of limitations is more clearly with the defendants in the Court below than the objection to the jurisdiction. For even if the Sheppards occupied the ground on which *393 the arguments of the counsel for the appellees would place them, it does not seem to me that it would in any manner impair their right to rely upon the statute as a complete bar to the suits of the appellees. If the law were so that a creditor who, with notice of a deed of trust made by his debtor for the indemnity of other ereditors, levies his execution upon the trust property, causes it to be sold, and becomes the purchaser at the sale under the execution, ought, in the eyes of a Court of Equity, looking to the substance and effect of the transaction, rather than the form, to be regarded as occupying the same position with a creditor, who, with like notice, should purchase the trust property directly from his debtor in discharge of his debt, I should still hold the plea of the statute a clear defence. For, whilst upon this supposed state of the law, the execution creditor would be regarded as a trustee, he would not be such a trustee as would, in a Court of Equity, be debarred of the protection of the statute. No case has heretofore been before this Court, of which I am aware, in which it was necessary to decide this question. Yet, so far as it has been incidentally subjected to the notice of the Court, the intimations of opinion have been plainly in accordance with the views just expressed. In giving a history of the circumstances leading to the rehearing in the case of Ambler v. Warwick, the reporter states, that after the first decision of the Court was made, the counsel of the appellees moved to append to the decree a provision that it should be without prejudice to any action at law that the appellees might thereafter bring for the recovery of the slaves, and also a provision inhibiting the appellants from pleading the act of limitations in bar of such action ; and it was in the course of the argument on this motion, that the Court expressed a willingness to rehear the case. Judge Brooke either regarded this motion as an implied admission by the counsel for the appellees that the plea of the statute would *394 be a successful defence to any action at law thereafter brought, or the admission was expressly made, for in discussing one of the propositions involved in the question of jurisdiction, he observes: “ This is conceded in admission, that if the appellees be not relieved in a Court of Equity on their bill in this case, they will be barred by the act of limitations at law,' unless there be a reservation in the decree.” This admission, taken in connexion with the familiar rule before mentioned, that a Court of Equity is bound by the statute where the state of facts are such as would support the plea in an action at law, is strong to shew, that whilst the Court sustained the jurisdiction in Ambler v. Warwick, the appellants would still have prevailed, in this Court, had there been an interval of five years between the date of their purchase from Morriss and the filing of the bill by the Warwicks in the Court below. In the case of Rose’s adm’x v. Burgess, 10 Leigh 186, cited by the counsel for the appellants, the question did not arise, as there had not intervened five years between the date of the purchase at the sale under the execution and the institution of the action of detinue by the mortgagees against the purchaser. I think, however, it is fairly to be inferred from what was said by Judge Tucker, in delivering his opinion, that he would have regarded five years possession by the purchaser as a bar to the mortgagees’ rights.
Though there is no express decision of this Court upon the exact question before us, authorities, English and American, are abundant to shew that the only trusts which are excepted from the operation of the statute of limitations, are the technical trusts which fall peculiarly and exclusively within the cognizance of a Court of Equity: that the equitable exception taking trusts out of the operation of the statute, extends only to actual and express trusts as between cestuis que trust and trustees properly so called; and does not embrace those *395 trusts which are matters of implication and construetion: and that a purchase for value, of property, the subject of a trust, accompanied by a possession openly and avowedly adverse, even though the purchase were the result of gross fraud and collusion, comes fully within the protection of the statute. Beckford v. Wade, 17 Ves. R. 87. In Kane v. Bloodgood, 7 John. Ch. R. 123, in which the Chancellor makes a full review of the English cases upon the subject, the same doctrine is asserted, and carried still further. He says, “ that so long as the trust is a subsisting one, and admitted by the acts and declarations of the parties, no doubt the statute does not affect it. If the trustee is in possession, and does not execute his trust, the possession of the trustee is the possession of the cestuis que trust; and if the only circumstance be that he does not perform his trust, his possession operates nothing as a bar; because his possession is according to his title.”—“ But supposing, (he proceeds in another portion of his opinion,) the trustee was to deny the right of his cestuis que trust, and assume absolute ownership, is there any case in equity that would allow the latter (the cestuis que trust) his remedy beyond the period limited for the recovery of legal estates at law ?”
If the parties to a trust, who, by the express terms of their contract, are bound to observe it, may, by asserting an adverse right, and setting up a claim in derogation of it, interpose the statute of limitations as a shield to protect them from the suits of those whose rights they have thus knowingly and faithlessly violated, it would be hard to maintain that a creditor who is a stranger to the trust, and who, in the exercise of his legal diligence, avails himself of the ordinary process of the law to subject the trust property to the payment of his demand, should be excluded from the benefits of the plea.
The decision of this Court in the case of Rankin v. Bradford, 1 Leigh 163, cited and relied on by the coun *396 sel for the appellee, does not, in my opinion, conflict with these views, and is inapplicable to the state of facts now before us. In that case the appellant Rankin not oniy wjtbi full notice of the trust, but by eXpress terms of his contract he bought only such right in the trust property as Verminet held in right of his wife. To whatsoever rights the wife held under the trust, he subjected himself by the express stipulations of the contract under which he obtained the possession of the slaves; and he stood in relation to the trust, and those claiming under it, very much in the same position as that which would have been occupied by the Sheppards in the cases before us, had they bargained expressly for the equity of redemption in the property now in controversy. Until he gave away and sold the property, there is nothing to shew that Rankin intended to use or treat the slaves as his absolute property ; and between the dates of his gifts and sales of the property, and the institution of the suit in equity against him, it does not appear, from the report of the case, that five years had intervened. It is also to be -observed, that at the date of Rankin’s purchase there was no trustee to represent the estate, which continued to be the case at the time of the institution of the suit J and that his removal of the slaves to a distant part of the State placed such difficulties in the way of the assertion of their rights, as brought the case of the wife and children, the cestuis que trust, in the opinion of the Court, within the saving of the act.
I see, then, nothing in the case of Sheppards v. Turpin, which ought to have precluded them from the right to insist in the Court below, as they did, on the statute of limitations as a perfect bar to Turpin’s suit. Nor is there any such change in the state of the pleadings and facts, or in the relative positions of the parties in the case of Sheppards v. Stubbs, as to subject the latter to a different decision : the rule being that where the *397 statute would apply to a suit brought by a trustee, it is equally applicable to a suit for the same subject matter by the cestuis que trust; inasmuch as they have a perfect right to institute any actions necessary for the timely protection of their rights, whether at law or in equity, using, where necessary, the name of the trustee.
Nor am I disposed to regard these as cases in which parties, having at one time a clear title to relief, have lost it, by mistaking the forum in which to assert it, or by having slept too long upon their rights. I am strongly inclined to the opinion that the objections made by the appellants to the deed ought to have prevailed. I cannot see any thing in the general frame and structure of Haley's deed, in its professed objects, or in the circumstances under which it was executed, exempting it from the full force of the criticisms of this Court upon the character of the deed which was the subject of its consideration in the case of Lang v. Lee, 3 Rand. 410. In that case the general proposition was advanced by two of the Judges who decided it, (Judges Coalter and Carr,) that a deed of trust made by a debtor professedly for the indemnity of certain preferred creditors, reserving to the grantor a power over the property conveyed, inconsistent with the avowed purposes of the trust, and adequate to the defeat thereof, was, because of such reservation, void as to any creditor or creditors thereby postponed. Does not Haley's deed fall within that rule ? It conveys the whole of his estate, real and personal, including all his dioses in action, avowedly with the purpose of securing all of his creditors; yet reserves to the debtor the right to retain the possession of the whole subject matter conveyed as against all having debts against him at the date of the deed, for three years ; also the right to carry on his business of a brickmaker to any extent that he and his trustees may think proper; and empowers him to borrow from the trustees, and the trustees to advance him, any sums they in their judgment shall deem sufficient *398 for the prosecution of his business : authorizes the trus-' tees to become his securities in all contracts for the hire of labourers, he may make: and if at any time after ioans or advancements are made, the trustees shall ¿eem his conduct injudicious or unthrifty, they have full power to sell the whole of the trust property, if necessary, to pay such loans and advancements, and discharge those contracts for the labourers, to which they may have become sureties. All the creditors who do not assent to the terms of the deed, on or before the 1st day of April ensuing its date, are to be postponed to those who do; and power is given to a majority in number of those who do assent, to extend the time of closing the deed to a period undefined, and unlimited, except by their own discretion. No power is expressly retained to the grantor to sell his stock in trade on hand, which is embraced in the deed, but it is necessarily implied in the right reserved, to carry on his business during the three years. May we not properly ask, as Judge Carr did, in the case of Lang v. Lee, “Can we imagine powers more completely adequate to the destruction of the avowed purposes of the deed, than those retained by the grantor in this case ?” ' The debtor, whilst professing to dedicate his whole property to the payment of his debts then due, reserves to himself a power by which he may, without any violation whatever of the express stipulations of the deed, divert the whole of the property to uses and purposes wholly foreign to the leading object avowed. For, it is to be observed, that there is nothing in the provisions of the deed securing the application of the profits of Haley's business during the three years, or such extended period as a majority of the creditors assenting to the deed may permit him to retain the property, or of the profits or proceeds arising from such transactions as may be based upon the contemplated advancements by the trustees, to the payment of the debts provided for in the deed of trust. In the deed, condemned by the Court *399 as fraudulent, in Lang v. Lee, there was a provision making it the duty of the debtor to account to the trustee, if called upon, for the proceeds of such sales as he might make, during the period in which he was permitted by this deed to retain possession of the property conveyed, yet this accountability, resting as it did on the mere volition and discretion of the trustee, was not considered by the Court as sufficient in that case to redeem the character of the deed. In Haley's deed there is no such provision. What security had the creditors, assenting to the deed, that Haley might not apply any sums of money advanced by the trustees to the satisfaction of other creditors ? Or even if he should vest such sums in articles in the line of his business, what security was there that the profits, and indeed the whole proceeds resulting from such investments, might not be devoted to purposes altogether foreign to the indemnity or satisfaction of any of the creditors ? Under the power to make the loans provided for in the deed, the property might, at the expiration of the three years, have stood charged with sums sufficient to consume it, to the entire exclusion of all the creditors assenting to the deed. Is not this power equivalent to a power of revocation ? And can such a contract between debtor and creditor, the avowed purposes of which rest for their execution upon the good faith of the former, unguarded even by a single covenant, and which may be entirely frustrated by his imprudence or misfortune in trade, be regarded in legal contemplation, as constituting a valid security or specific lien on the property conveyed, as against any creditor postponed by it? I am strongly inclined to think not. If the proofs were such as to justify the inference (which the counsel for the appellees argue it is proper to make,) that the deed was the result of a convention and assent of all the creditors, the case might be different. Upon such a supposed state of facts, I am not prepared to say that a deed having the samo provisions with that now *400 under consideration, would not be sustained. But I see no proofs in the record to shew that such was the fact, and the provision in the deed, postponing all the creditors ,^0 not assent; leads, in the absence of such proofs, t0 tjie opposite conclusion.
As an authority in support of the deed, the counsel for the appellees rely upon the case of Janney &c. v. Barnes, 11 Leigh 100. In that case, this Court sustained the two deeds under which the appellee’s claimed, though each, as argued by the counsel for the appellees, seem to me to contain provisions that were regarded by this Court in the case of Lang v. Lee, as badges of fraud. There are, however, I think, circumstances by which the cases may be distinguished, and the consistency of the two sustained. By the first deed in the case of Janney v. Barnes, whilst the grantors reserve to themselves an indulgence of twelve months, in which to pay the debts secured by the deed, during which they had the right to dispose of the goods conveyed, still all their actings in the matter were, by the express stipulations of the deed, in the character of agents for the grantee. The second deed stipulated that the grantors should be permitted to remain in possession of the goods, and sell the same during the space of three months: yet, by the terms of the deed, it was made their duty “ to pay over to the trustee from time to time the proceeds of the sales.” The two deeds might, I think, have been very properly regarded as parts and parcels of one transaction, and the grantors viewed in the strictest sense as mere agents, for the creditor, in their possession of, control over, and sale of the goods. There is - also another important feature by which the case of Janney v. Barnes, is distinguishable from that of Lang v. Lee, and the cases now before us. It does not appear from the report of this case, that the judgment creditors, Janney and others, had acquired any lien upon the trust property before the trustee Hawes *401 had taken possession under the deed to him, and sold the goods conveyed in it. The exact date of the judgments do not appear; though they were obtained at the August term of King William County Court 1837. The deed to Hawes is dated 13th May 1837, and by its provisions, as before stated, the grantors were to remain in possession of the goods for three months. The trustee Hawes, in his answer, states, that the grantors were permitted to remain in possession for the limited time mentioned in the deed, and that he then sold the remainder of the stock on hand at auction. There is, therefore, nothing in the case to shew that the trustee Hawes was not in the possession of the property, and in the active performance of his duties as trustee before the parties, seeking to impeach the conveyance, had acquired any lien whatever upon the property: a circumstance which, if it had been present in the case of Lang v. Lee, Judge Coalter was of opinion, might have been sufficient of itself to have varied the fate of the case. He says, “ Had the trustee Browne taken possession of the goods before the second deed of trust, it might have been another matter, or before a judgment recovered against Lee, in case of a judgment creditor. This was not done. Such act of taking’ possession might, from its date, have purged the deed of its original vice, by discharging it of that condition which rendered the lien abortive.” No reasons are assigned by this Court in the case of Janney v. Barnes, for its decree. Had the Court intended by their decision in that case, however, to overrule the case of Lang v. Lee, it is not to be presumed that they would have done so without stating some reasons for their action.
Viewing then the case of Lang v. Lee, as an authority which stands unshaken by any decision of this Court, and regarding, as I do, the power reserved to the grantor Haley, to remain in possession of the property conveyed for the space of three years, and in the mean *402 time to charge the property to an indefinite extent for such advances as might be made by the trustees, equally as efficient to destroy the avowed purposes of ^ ag was p0wer reserved to the grantor Tee, by his deed, in that case to keep possession for a limited time, and dispose of the goods embraced in it, I ¿o not see how the deed under consideration can be sustained. There are other features in Haley's deed which are usually regarded by the Courts, when considering such questions, as badges of fraud. Only three of the creditors are named in the deed, and there is a failure to specify the amounts of any of the debts. The clause too authorizing a majority of the creditors who may sign the deed, to extend further indulgence to the grantor, confers a power by which a debtor in combination with persons having debts against him trifling in amount, might postpone indefinitely the payment of the great bulk of his debt. These features, taken in connexion with the power before commented on, reserved to the grantor to charge the property with such advances as might be made by the trustees, do, in my opinion, to say the least, present such strong indications of a fraudulent purpose on the part of the grantor, to delay and hinder his creditors, as to make it incumbent on those claiming under the deed, to shew that the transaction was fair: that the deed was in truth designed as a bona fide indemnity fpr creditors, and not as a mask under which the debtor might carry on his business for his own emolument, whilst professing to make a surrender of his whole property to his creditors.
The statement in the deposition of the witness Joseph C. Haley, in the case of Turpin v. Sheppards, that a portion of the slaves sold under the executions remained in the possession of Benjamin Haley till the period of his death in 1826, is not relevant to any allegation made in Turpin's bill. The statement, however, is not in any manner inconsistent either with the answer or with *403 the return of the sergeant, shewing that the slaves were delivered to the purchasers immediately after the sale, The immediate return of the slaves to the possession of the debtor, by the permission of the creditors who had purchased at the sale under the execution, Avould not in any manner prejudice the rights of the latter; the possession of the debtor being in such cases regarded as the possession of the purchaser.
I have not deemed it necessary to consider any question arising out of the fact deposed to by the same witness, that the slaves were levied upon and sold at Haley’s house, beyond the jurisdiction of the officer making the levy and sale. There is nothing in the pleadings to which the testimony in that particular is relevant, and if the fact had been properly put in issue and proved, its effect would have been to convert the levy and sale into a wrong, and bring the parties and their case still more clearly within the operation of the statute of limitations. Nor have I thought it necessary to enquire whether it was an error in the Chancellor to permit Sheppard to file his answer in the case of Stubbs’ ex’or v. Sheppards, after an interlocutory order by default had been rendered against him. The filing of the answer was not in itself any injury to the plaintiff. The action of the Court, prejudicial to him, if any, was the setting aside, after the filing of the answer, the interlocutory decree previously pronounced in his favour; and of this he is estopped to complain, inasmuch as it appears from the record that the decree was set aside by his own consent.
I am, therefore of opinion to set aside the decrees of the Court below, and to dismiss the bill in each case with costs.
Allen, J.
The counsel in arguing these causes have assumed that the slaves in the proceedings mentioned, were sold under the executions, and purchased by the *404 Sheppards in pursuance of an understanding between them and B. Haley, the grantor in the deed of trust, that the slaves were to be held by the Sheppards subject ^ ¿ee(p
N0 suctL point was made in the pleadings: and if proof of a matter not put in issue by the pleadings could avail, there is no evidence whatever of any such understanding or agreement.
It is, in my view of the pleadings and proofs, the naked case of a sale under an execution, of property encumbered by a deed of trust, to the creditor, who, though he had notice of the deed, paid a full price. It is not alleged or proved that the equity of redemption was alone levied on, and there is nothing from which any thing of the kind could be inferred. Such a levy would have been irregular, as the equitable and contingent interest remaining in the grantor could not be reached by an execution. Claytor v. Anthony, 6 Rand. 285.
The creditor levied on the property as the property of his debtor notwithstanding and in opposition to the deed of trust. The sale and purchase was of the whole property out and out, and not of any limited interest therein. The possession acquired by the purchase was adverse to the trustee and all interested in the deed, and this possession having continued more than five years before any suit was brought by the trustee or cestui que trust, the statute of limitations, it seems to me, presents a complete bar.
On this ground, and without considering the other questions arising on the record, I think the decrees should be reversed, and bills dismissed as against the Sheppards.