Brooke, President.
Several objections were made to die decree. The first, which meets us at the threshold of the cause, is the objection to the jurisdiction of the court: and, after a critical examination of the bill, I have not been able to perceive how it can be obviated.
Without inquiring, whether a foundation is well laid for the jurisdiction of the court, as regards the other defendants than the purchasers of the slaves (who alone have appealed from the decree), it may be remarked, that upon the evidence in the record, it appears to be merely colourable. The pretexts for the jurisdiction of the court, as regards the appellants, is still less to be countenanced.
One is, that the trustee declined suing at law; that is, he was willing, that the appellees should proceed, either at law or in equity, as they should be advised. It is neither alleged in the hill, that he refused to sue at law, nor that he refused to permit the appellees to use his name. Such an allegation would have laid a bettér foundation for the jurisdiction of a court of equity, though it may be questioned, whether it would have been sufficient, as the appellees might have used the name of the trustee, and a court of law would not have permitted him to dismiss the suit, upon the plaintiffs’ indemnifying him against all costs.
Another ground is, that this is a proper case for a court of equity, to prevent a multiplicity of suits. But this is not tenable. The case does not come within the principle, on which courts of equity take jurisdiction to prevent the multiplicity of suits at law: it does not rest upon a right, which is in common, objected to by many persons whose pretensions are in all respects similar, and in controverting which, the decision for or against any of them, must turn on the same evidence; as in the case of an exclusive claim to fish in a particular water; a claim affecting the pretensions of many who may controvert it. For, though the appellants *205 are all purchasers from Morris, mediately or immediately, they are so under variant circumstances, and at different times: they hold possession of the slaves severally, independently of, and adversely to, the claim both of Morris and of the appellees under the deed of trust.
Nor can the case be likened to the case of mortgagor and mortgagee. The appellants holding adversely to the deed of trust, occupy an intirely different ground from that of a purchaser of mortgaged property. In the case of mortgagor and mortgagee, in whomever the legal title and possession of the mortgaged subject maj he, the equity of redemption in the mortgagor or his assignee, follows it, and can only be foreclosed in a court of equity. Not so in the case of a sale of property under a deed of trust, in pursuance of the deed. In such case, there remains no equity of redemption any where. But the claim of the appellants is not under hut against the deed of trust: it is strictly legal, as is that of the trustee under the deed of trust; and it ought only to he controverted in a court of law.
The suggestion, that the appellants after a decision at law against them, might come into a court of equity, and shew that, though the slaves purchased by them were subject to the deed of trust, yet that there was other property to satisfy the claim of the appellees, exclusive of the slaves so purchased, is not countenanced by the evidence in the record; and, if it were, it would be no ground, on which to compel the appellants to relinquish their right to a trial by jury and viva voce testimony, and to submit to the delays and costs of a court of equity. Nor have they lost their right to controvert the claim of the appellees in a court of law, by failing to insist on it by plea or in their answers; it being the settled rule of the court, that if it appear from the face of the bill, that, the matter thereof is not proper for a court of equity, it should be dismissed, even after answer filed, and though there he no plea to the jurisdiction. Pollard v. Patterson, 3 Hen. & Munf. 67.
*206 In this opinion of the President, the other judges at first concurred; and an order was accordingly entered, reversing the decree as to the appellants, dismissing the bill as to them, for defect of jurisdiction, and remanding the cause as to the other defendants. But, afterwards, Stanard moved the court to correct the decree, by adding, 1. that the dis-mission of the bill should be without prejudice to any actions at law, which should be brought to recover the slaves of the appellants, which Johnson agreed to; and 2. a provision inhibiting the appellants from pleading the act of limitations in bar of such actions at law (he cited Anon. 1 Vern. 73. 4 Bac. Abr. 481.) which Johnson earnestly resisted. And in the course of the conversation on this point, the court expressed its willingness to re-consider the question of jurisdiction, and directed another argument of that point. It was accordingly argued again, by the same counsel, more elaborately than before, but the general topics of argument, advanced and insisted on, by the counsel on both sides, were essentially the same. The judges then delivered their opinions seriatim:
Carr, J.
My experience in courts, has convinced me, that much mischief is done, by stretching the jurisdiction of equity beyond its proper limits, to take in particular cases, which seem to address themselves to our feelings of compassion, or sense of justice. I have found too, that this jurisdiction will encroach, unless it be steadily watched; for, in our anxiety to attain exact justice in the case immediately before us, we are apt to overlook remoter consequences, and to forget, that no decision which conforms to settled rules, can do so much mischief, as one which, though it may seem to fit the special case, violates and unsettles fixed rules and principles. This being the bent of my mind, I am sometimes, no doubt, carried too far the other way, by my anxiety to avoid this mischief: and this, I incline to think, was the fact in the case before us.
*207 To the proposition, that the creditor has the same right to the aid of equity, to execute a deed of trust, as to foreclose a mortgage, I can by no means assent. They are both securities for money: but the law of the contract, by which the parties have agreed to be governed, is materially different. The mortgagee must come into equity; no other mode is given : but the cestui que trust has no such need. The parties have appointed a disinterested agent, who representing them both, is, in case of non-payment, empowered to act definitively on the subject; to sell the property, pay the debt, and return the excess to the debtor. His deed (if the proceeding has been fair) gives a perfect and irredeemable title to the purchaser. To hold, that, notwithstanding this contract, the creditor may, at will, and though no obstacle is raised to the execution by the trustee, draw the debtor into litigation, were to violate the agreement of the parties, and force a man to incur costs and charges, who is willing and anxious to comply with his undertaking, and deliver the property into the hands of the trustee. I cannot, therefore, on this ground, entertain the plaintiffs’ bill.
I consider the case made by the bill (so far as relates to the appellants) to be substantially this: that Morris executed to the plaintiffs a deed of trust of these slaves (inter alia) and that the appellants have, since the date of that deed, acquired possession of the slaves, in some way, from Morris; and they are called on to say, how and when they acquired such possession. In answer, they state, that they purchased from Morris; give the particular dates of their purchases, which are after the execution of the deed; and put their defence on the ground, that Morris was authorised by the plaintiffs to sell the slaves, provided the proceeds were sent to them, and that they were so sent. If the bill had stated, that the defendants held the slaves by a claim paramount the deed of trust, I have no doubt it might have been demurred to : and, though not so stated by the bill, if it had appeared by plea or answer, that the defendants did not claim under Morris, but, by adverse legal title, I think it would have shewn a *208 case not proper for relief in equity. Of this kind was the case of Stuart v. Coalter. But it appears here, that tire defendants all bought after Morris had executed the deed, and departed with the legal title. Of course, they acquired nothing but an equity; no title, which they could in any way vindicate at law. In the first argument, these features of the cause did not strike me; especially, that this is not a claim adverse to the title of Morris, but an equity derived from him, after the execution of the deed. In this aspect of the case, I incline to think the jurisdiction of equity may be sustained; particularly, when we consider the multiplicity of suits which will be saved by it; for if the plaintiffs be dismissed from this court, the trustee must bring four actions of detinue against the holders of the slaves, and each of these holders, may then file his bill against the other parties. Upon these grounds I am content to entertain the cause.