Moncure P.
delivered the opinion of the court.
In 1859 J. B. and William A. Bunn, surviving partners of themselves and John Dunn, late merchants and partners trading under the style of John Dunn & Sons, claiming to be creditors of A. J. Dunn and W. W. Dunn in about $4,000, and also of the said A. J. Dunn in about $1,500, and that W. W. Dunn resided out of the state, and A. J. Dunn was preparing to remove from the state, and each of them had property within the state, sued out of the Circuit court of Washington county a foreign attachment against the said debtors and their property for the purpose of recovering the said debts. In their original bill in the said suit they charge, among other things, that in the year 1849 a partnership was formed to merchandize at Tazewell court-house between the firm of John Dunn & Sons and A. J. Dunn and W. W. D.unn, the style of which partnership was John Dunn & Co., and which lasted about two years, when it was dissolved by mutual consent. A new firm was then formed called A. J. Dunn & Co., consisting of John Dunn & Sons and A. J. Dunn, which commenced in 1851, was managed at Tazewell court-house, its place of business, wholly by A. J. Dunn, and was dissolved in 1853. There was no written contract of partnership in either case. There has never been any settlement of either of these firms. The assets of the first are in the hands of A. J. and W. W. Dunn, and of the second in the hands of A. J. Dunn. The plaintiffs therefore pray, among other things, that A. J. Dunn and W. W. Dunn be made defendants to the *293 bill, that an account be taken to ascertain the amount due to the plaintiffs from A. J. and W. W. Dunn, and from A. J. Dunn individually, and that a decree be rendered against them for the sums found due, and also for the sale of the property of either of them to satisfy said decree.
Afterwards, to wit, in March 1861, an amended bill was filed by the plaintiffs, in which they charge, among other things, that W. W. Dunn owned a house and lot at Tazewell court-house which he sold to Thomas R. Smith for $1,500, which was still due, but had not then become payable. They therefore pray that the said Smith and A. J. and W. W. Dunn be made defendants to said amended bill, that the said purchase money may be made liable for their said claims, that the said Smith be injoined from paying it away or otherwise disposing of it until the further order of the court, that the settlement prayed for in the original bill be made accordingly, and for further and general relief. An injunction was awarded, which appears to have been forthwith perfected by the execution of the proper bond.
The record does not show that anything further was done in the suit until 1870, about nine years after the filing of the amended bill. In that year W. W. Dunn, who was then still a non-resident of the state, filed a demurrer and answer to said original and amended bills. Before proceeding to answer he “demurs to said bills, and says they are not sufficient in equity to entitle the complainants to the relief which they seek, or to any relief in this cóurt.” But if respondent be held bound to answer said bills, he proceeds to answer the same accordingly; in which answer he sets out his defence, denies that he owes the firm of John Dunn & Co. one cent, but *294 charges that said concern, upon a full and fair settlement, owes him; says that he “knows nothing of the new concern charged by complainants to have been entered into by John Dunn & Sons and A. J. Dunn, as he had nothing to do with it, and cannot imagine how he is interested in any way with the settlement of the business of that concern;” and prays that the injunction may be dissolved and the bills dismissed.
After that demurrer and answer were filed nothing further appears to have been done in the suit until the 14th day of September 1872, when the cause came on to be heard upon the bill and amended bill of the complainants and the demurrer of W. W. Dunn thereto; on consideration whereof the court sustained the demurrer, dismissed the bill, and ordered that complainants pay the defendant W. W. Dunn his costs. Prom that order the said J. B. Dunn and W. A. Dunn, surviving partners of John Dunn & Sons, applied for and obtained an appeal from a judge of this court.
There is no assignment of error in the petition for an appeal, except that “ neither the demurrer nor the decree of the court assign any reason why the bills should be dismissed;” and that “ the court, instead of dismissing the bill, should have overruled the demurrer and allowed the case to proceed on its merits.” The case was submitted to this court upon the petition and upon a brief filed by the counsel for the appellee. In that brief it is contended that “ the Circuit court did not err in sustaining the demurrer in this case and dismissing the bill, as it was clearly multifarious.” Story’s Eq. Pl. sec. 271, note 1; Newland v. Rogers, 3 Barb. Ch. R. 434; Boyd v. Hoyt, 5 Paige R. 65, 79, note 1.
*295 The question then which we now have to solve is, whether the bill be multifarious or not.
If it be so, it is because there are united in the bill a demand against A. J. Dunn and W. W. Dunn jointly, for a settlement of the partnership accounts of the firm of John Dunn & Co. and for a balance claimed to be due to the plaintiffs upon such settlement; and a demand against A. J. Dunn individually; for a settlement of the partnership accounts of the firm of A. J. Dunn & Co., and for a balance claimed to be due to the plaintiffs upon such settlement; the said two firms being wholly unconnected with each other; and the defendant W. W. Dunn having no interest in the firm of A. J. Dunn & Co., or in the settlement of the partnership accounts of that firm, and not being responsible, in any way, for any demand of the plaintiffs against that firm or any member of it.
We are of opinion that the bill is multifarious upon that ground, and was therefore demurrable, according to the authorities referred to in the brief of the counsel for the appellee. In Story’s Eq. Pl. § 271, it is said that “ a bill should not be, what is technically termed multifarious; for if it is so, it is demurrable, and may be dismissed by the court of its own accord, even if not objected to by the defendant. By multifariousness in a bill is meant, the improperly joining in one bill distinct and independent matters, and thereby confounding them; as, for example, the uniting in one bill of several matters perfectly distinct and unconnected against one defendant, or the demand of several matters of a distinct and independent nature against several defendants, in the same bill. In the latter case, the proceeding would be oppressive, because it would tend to load each defendant with an unnecessary burden of costs, by swelling the pleadings *296 with the statement of the several claims of the other defendants, with which he has no connection. In the former case, the defendant would be compellable to Unite in his answer and defence, different matters wholly unconnected with each other; and thus the proofs applicable to each would be apt to be confounded' with each other, and great delays would be occasioned by waiting for the proofs respecting one of the matters when the others might be fully ripe for hearing.”
The doctrine on this subject is fully set forth in the work referred to and in the cases cited in the notes thereto; but it is unnecessary to state any more of it in this opinion. There are some nice distinctions in the cases, and it is sometimes a difficult question to determine whether a bill is multifarious or not. But without noticing those distinctions any further, it is sufficient to say, that consistently with them all, the bill in this case appears to be plainly multifarious. In note 5 to § 271, before quoted, it is said, that “ multifariousness must be objected to by the' defendant on demurrer, and cannot be objected to by him at the hearing. But the court may, however, take the objection at the hearing sua sponte; for the court is not bound to allow a bill of such a nature, although the parties may not take the objection in season.” In this case there was a demurrer at the beginning of the answer, though the causes of the demurrer are not assigned therein. According to the English practice, and that of many of the other states of our Union, it appears that the causes are assigned in the demurrer; but such is not the general practice in this state. On the contrary, it seems to be usual with us to embody the demurrer in the answer, in general language, as was done in this case; and that practice seems to be *297 recognized, if it be not expressly authorized, by the Code p. 1093, ch. 167, § 31, which says that “the form of a demurrer or joinder shall be: 6 The defendant (or plaintiff) says that the declaration (or plea &c.) is not (or is) sufficient in law.’” In this case there could have been no doubt as to the ground intended to be relied on in support of the demurrer. For besides that it is palpable on the face of the bill, it is made even more so by the allegation of the answer, that “respondent knows nothing of the new concern charged by complainants to have been entered into by John Dunn & Sons and A. J. Dunn, as he had nothing to do with it, and cannot imagine how he is interested in any way with the settlement of the business of that concern.”
We are therefore of opinion, that there is no error in the decree of the Circuit court and that it ought to be •affirmed.
Decree aeeirmed.