MONCURE, P.,
delivered the opinion of the court. After stating the case he proceeded:
There is but a single assignment of error in the petition for an appeal in this case, which is in these words:
“The# single error complained of is in overruling the demurrer to the bill of the complainants, and thereby permitting the complainants to proceed in one bill against *several persons in regard to matters entirely distinct and independent, and as to which the defendants had no common or related interest.”
And the petitioners proceed as follows in their said petition:
“The bill charges (page 5) that Abraham Nulton, by deed of 24th June, 1869, conveyed to Joseph A. Nulton, one of the petitioners, certain real estate in trust for Sarah Nulton. And that this deed was wholly without consideration, and was illegal and void; that on the 10th of November, 1869, and on the 23d February, 1870, the said Abraham Nulton conveyed to Joseph A. Nulton certain other pieces of real property ‘for which no adequate consideration hath been given him;’ and the said Joseph A. Nulton is required to make discovery of the settlement referred to *247 in the deeds to him, and to exhibit a full settlement of his partnership accounts with his father, the said Abraham Nulton.
“And the prayer of the bill is, that the deed to Sarah Nulton and the two deeds to Joseph A. Nulton may be set aside, and that he be required to settle his accounts as partner of his father.
“Petitioners are advised that this bill is decidedly multifarious — Joseph A. Nulton protesting that he has nothing to do with the property conveyed to Sarah Nulton, and by her devised to his co-petitioners, and the other petitioners protesting that they have no interest or concern in the two deeds to Joseph A. Nulton, or in the settlement of his partnership account with his father. 1 Daniel, Ch’y Pr. p. 334; Story’s Eq. Pl. § 271; Dunn v. Dunn & als., 26 Gratt. 291; Sawyer v. Noble, 55 Maine 227.”
The court is of opinion that the circuit court did not err in overruling the demurrer to the bill, and that the same is not multifarious. This, we think, plainly appears from *the authorities referred to in the petition and the notes of argument. Story’s Eq. Pl. §§ 271, 285-6; Segar, &c., v. Parish, &c., 20 Gratt. 672; Jones’ ex’ors v. Clark & als., 23 Id. 662, 676; Dunn v. Dunn & als., 26 Id. 291; Brenkerhoff v. Brown, 6 Johns. Ch. R. 139; Fellows v. Fellows, 4 Cow. R. 682. It is true, as was said by Lord Cottenham in Campbell v. Mackey, 1 My. & Cr. 603, in the passage quoted from his opinion in that case by the counsel for the appellants: “To lay down any rule applicable universally, or to say what constitutes multifariousness as an abstract proposition is, upon the authorities, utterly impossible. The cases upon the subject are extremely various, and the court in deciding them, seems to have considered what was convenient in particular circumstances, rather than to have attempted to lay down any absolute rule.” Yet, in most cases there is little or no difficulty in deciding the question whether or not multifariousness exists in the particular case, and such, in our opinion, is this case.
The complainants, William B. Isaacs & Co., claimed to be creditors of Abraham Nulton, under assignments to them of several of his notes by the Bank of the Valley in Virginia and the Farmers Bank of Virginia; and they brought their suit to enforce the payment of their claim out of the estate of their debtor. He had little or no personal estate, and all his real estate he had' conveyed to and for the use of his wife, Sarah Nulton, and his son, Joseph A. Nulton, which conveyances were charged by the said creditors to be voluntary and fraudulent and void as to his creditors, and especially the complainants. They, therefore, sought by their said suit to remove these obstructions out of their way, without which they could not possibly obtain satisfaction of their claims, and for that purpose they had, necessarily, to make not only the administrator of Abraham Nulton, but also the claimants under the said alleged fraudulent conveyances, "'defendants to the bill; and as Joseph A. Nulton claimed to have become the purchaser of the property conveyed to him by his father, the said Abraham Nulton, by means of a balance alleged to have been due to him on a settlement of a partnership account between them, the complainants prayed in their bill that the defendant, Joseph A. Nulton, might “make a complete discovery of the consideration upon which the two deeds to him were based, and if essential to the proper understanding of the same, that his account as late partner of the decedent may be settled.” We think that all the persons made defendants to the suit were proper and necessary parties, and that the conditional prayer for a settlement of the partnership account was proper and unobjectionable, if not necessary. We have said so much on this subject, not because we had any difficulty about it, but because the learned counsel for the appellants made it the chief, if not the only ground of complaint. at least in the petition for an appeal. We will now proceed to consider whether there be any error in any other portion of the decree, which was complained of as being erroneous, though in different respects, in the arguments of the counsel, both of the appellants and appellees.
The court is further of opinion, that the circuit court did not err in decreeing that the property conveyed by Abraham Nulton to Joseph A. Nulton, in his own right by the two deeds, of which copies marked Ñ and O, are filed as exhibits with the bill, is not liable for the payment of the complainants’ claims.
If the orders of the circuit court of the United States in the record mentioned for the payment of three out of the four claims of the complainants had been valid judgments, and liens as such on the real estate of the debtor, Abraham Nulton, notwithstanding they were never registered, then the said property would have been liable *for the payment, at least oi the said three claims, whether the said two deeds were voluntary and fraudulent or not.
But the court is of opinion, that the said orders of the circuit court of the United States were not valid judgments against the said Abraham Nulton. The said court would have had no jurisdiction to render such judgments, even if actions of debt had been brought in the said court by the Bank of the Valley in Virginia against the said Abraham Nulton for the recovery of the said claims, as both parties, plaintiffs and defendants, resided in the state. We do not mean to say that judgments rendered in such actions would have been regarded as void in any collateral proceeding. But we are of opinion that where, as in this case, the creditors, instead of proceeding by the common law action of debt to recover their claims, obtain an order for their payment on a mere summary rule to show cause — such order, though no defence be made to the rule, has not the force and effect of a judgment, and is not a lien on real estate, whether registered or not. The order is void on its face as a judgment. The defendant is entitled to the benefit of a *248 common law action in which he can regularly make his defence, and have the benefit of a trial by jury; and he is entitled to be sued in the courts of his own state, and is not_ suable in the federal courts, even in an action brought against him alone. Much less can he be proceeded against by a mere summary rule and order in,a suit brought in one of the federal courts against his creditor by another person or corporation. An order might, no doubt, have been made in that suit for the collection of debts due the defendant and liable to the claim of the plaintiff. But such collection, if it could not be made without legal proceedings, would have to be made by action at common law in a court of competent jurisdiction, just as if such debts 'had not been assigned or were still *due to the original creditor. The debtor would lose none of his rights of defence by the assignment.
The true doctrine of the law on this subject is, in our opinion, correctly laid down in the opinion of the supreme court of the United States, delivered by Mr. Justice Field in Windsor v. McVeigh, 3 Otto R. 274. “The doctrine invoked by counsel,” said the court in that case, page 282, “that where a court has once acquired jurisdiction, it has a right to decide every question which arises in the cause, and its judgment, however erroneous, cannot be collaterally assailed, is undoubtedly correct as a general proposition; but like all general propositions, is subject to many qualifications in its application. All courts, even the highest, are more or less limited in their jurisdiction; they are limited to particular classes of actions, such as civil or criminal, or to particular modes of administering relief, such as legal or equitable,” &c. “Though the court may possess jurisdiction of a cause, of the subject matter and of the parties, it is still limited in its mode of procedure, and in the extent and _ character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be for a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, _ has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in that case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. Instances of this kind show that the general doctrine stated by counsel is subject to many qualifications. The judgments mentioned, given in the cases supposed, would not be merely erroneous, they would be absolutely void, because the court in rendering them would transcend the limits of its authority in those *cases.” “So a departure from established modes’ of procedure will often render the judgment void; thus the sentence of a person charged with felony, upon conviction by the court, without the intervention of a jury, would be invalid for any purpose. The decree of a court of equity upon oral allegations, without written pleadings, would be an idle act of no force beyond that of an advisory proceeding of the chancellor; and the reason is, that the courts are not authorized to exert their power in that way.”
According to the principles thus laid down, the orders in question have not the force and effect of judgments. There is nothing in those principles at all in conflict with the opinion of this court, delivered by Judge Christian, in the case of Lancaster v. Wilson, 27 Gratt. 624. The distinction between the two is sufficiently obvious without any comment upon them here.
If the orders aforesaid were judgments, a very interesting question would aris.e, whether registration of those orders would have been necessary to make them liens on the real estate of the debtor; but as they are not judgments, it is unnecessary to consider that question.
It follows, therefore, from what has been said, that the property conveyed to the said Joseph A. Nulton, as aforesaid, is not liable for the payment of the complainants’ claims. His answer in response to an allegation of the bill positively denied that the deeds were executed with fraudulent intent, and set out the valuable consideration on which he alleged that they were founded, and there is no proof on the other side. The court, therefore, rightly considered that there was no fraud in the said deeds, and decreed accordingly.
The court is further of opinion that the circuit court did not err in the opinion that from the evidence the conveyance from Abraham Nulton to Joseph A. Nulton; as trustee for Sarah Nulton, which is filed as exhibit H *with the complainants’ bill, was voluntary and without consideration, and in, therefore, decreeing that the said conveyance be set aside so far as the claims of the complainants are concerned, and that the property thereby conveyed be subjected to the payment of said claims. Blow v. Maynard, 2 Leigh 29.
The court is further of opinion that, there is no error in the said decree, and that the same ought therefore to be affirmed, which ir ordered accordingly.
Decree affirmed.