# Richmond.

## OGDEN v. DAVIDSON AND ALS.

### DECEMBER 10th, 1885.

1. PRACTICE IN CHANCERY—*Void decrees.*—Decree is merely null as to persons not named as parties in bill, and against whom no allegations are made and no relief is prayed. *Cronise* v. *Carper*, 80 Va. 678.
2. IDEM—*Case at bar.*—Ward filed bill against guardian for settlement. Guardian had loaned ward's money to W., secured by trust deed on Pedlar Mills. By consent decree, trust deed was transferred to ward, and commissioner appointed to collect loan and pay over to ward. Trustee made sale under trust deed to O., who paid part and gave bonds for residue, and made default. Sale was reported to court. Two days afterwards a rule was issued and served on O., to show cause next day why Pedlar Mills should not be resold. Next day a decree of resale was entered—

HELD :

 Neither trustee nor purchaser being parties to the suit, and the sale not being judicial, the decree is a nullity *quoad* those persons.

Appeal from decree of circuit court of Amherst county, rendered October 18, 1884, in chancery suit of Bennet M. Davidson, complainant, against Henry E. Smith and others, defendants.

As appears from the record, the plaintiff, Davidson, in February, 1879, filed his bill against said Smith, who was his guardian, and six others, the sureties of said Smith as guardian, the object being to surcharge and falsify the *ex parte*

settlements of the guardian, and to hold him and his sureties bound for money which came into his hands as guardian, and which he had not accounted for. In this suit, on the 15th day of October, 1879, a compromise decree was entered, settling all matters in dispute. In accordance with the terms of this decree, said guardian transferred to the ward certain loans which he had made of the latter's money, and guaranteed the solvency of the loans, and the borrowers from said guardian were made parties to the suit, and E. S. and J. T. Brown were appointed commissioners, and directed to collect, by suit or otherwise, the said loans, and to pay the same over to the ward. Since that decree, all that was done in the suit was to ratify the acts of the commissioners under that decree.

One of the loans made by said guardian was of the sum of $7,000, made on the 19th day of December, 1876, to one Hazell Williams, and which was secured by a deed of trust executed by the borrower, to John B. Robertson, trustee, on certain property known as "Pedlar Mills," in said county. On the 29th of April, 1880, the trustee, Robertson, offered "Pedlar Mills" for sale at public auction, under the trust deed. The sale was made, and Silas Ogden, the appellant here, became the purchaser at the price of $8,000, of which he paid $500 cash, and executed to said trustee his bonds for the residue, payable respectively in one, two, three, and four years, and possession was given to and remains with said purchaser.

Of this sale, no report was made in the said suit until October 15, 1884, when the said commissioners reported it to the court in that suit, upon a statement furnished them by the trustee, setting out the price and terms of sale, and the payment which had been made by the purchaser, to-wit: $500 on the day of sale, $1,000 as of August 6, 1881, and $500 as of January 29, 1884, and that judgments at law had been obtained on the purchaser's bonds.

On the 15th day of October, 1884, the same day on which the commissioners' report, above referred to, was made, a decree was entered in the cause, which, among other things, contained the following clause: "And the court doth order that a rule issue against Silas Ogden, returnable on Friday, the 17th day of October, 1884, at 10 o'clock A. M., to show cause, if any he can, why the 'Pedlar Mills' should not be resold on his account." And on the 18th day of October, 1884, another decree was entered, which recited that the said rule had been awarded and issued, and executed on said Ogden, and that no answer thereto had been filed by him, ordered said commissioners to advertise and sell "Pedlar Mills," unless said Ogden should, within sixty days from the date of the decree, pay the balance of purchase money due by him.

Neither Robertson, the trustee, who made the sale under the trust deed, nor Ogden, the purchaser thereunder, was a party to the suit. From this last decree Ogden obtained an appeal to this court.

*W. G. Loving, O. G. Clay* and *R. M. Brown* for appellant.

*E. S. Brown,* for appellees.

RICHARDSON, J., after stating the case, delivered the opinion of the court.

No doctrine is better settled than that every man is entitled to a day in court to defend his rights, and that a decree rendered against him, when he has had no opportunity for defence, is a nullity, and may be so pronounced by any court wherein it may be drawn into controversy.

*Moseley* v. *Cocke*, 7 Leigh, 224, was a suit in chancery instituted by the appellees as creditors of William Bentley,

deceased, against his children and certain purchasers claiming under them, for the purpose of setting aside as voluntary, fraudulent and void, certain conveyances of lands made by William Bentley in his lifetime to his children. William Moseley was a purchaser of part of the lands which had been conveyed by the deceased to his children, the conveyance whereof it was the object of the bill to set aside, but he was not made a party defendant by the bill, nor was there any allegation in it, nor any relief prayed against him. Yet a *subpœna* was sued out and served on Moseley to answer the bill, and he not appearing, it was followed by a *decree nisi*, which was also served on him; and upon the hearing of the cause, the bill was taken for confessed as to him, and a decree was entered affecting his rights as well as those of William Bentley's children and other defendants, purchasers under the conveyances which were impugned by the bill.

This court held that Moseley was not a party defendant in any fair sense of the term, and that the decree was, as to him, a nullity. Tucker, P., delivering the opinion of the court, said: "No process is prayed against him by the bill, and, therefore, according to the authorities, he was not a defendant. * * * * In short, a decree against one not named in the bill, and in nowise comprehended in its general allegations, is a nullity." See also the opinion of Lacy, J., in the case of *Cronise* v. *Carper*, 80 Va. 678. And so, in the case in hand, the appellant, Ogden, was not named in the bill, and no process or relief was therein prayed for against him, nor was he comprehended in the general allegations of the bill. And being no party to the suit, Ogden certainly could not be bound by any decree pronounced therein.

It is true, as contended by the learned counsel for the appellee, that any purchaser who buys property embraced in a suit, and subject to the control of the court, becomes a *quasi* party

to the cause, and is amenable to the orders of the court, and that where such purchaser is in default, a rule against him to show cause why there should not be a resale is the regular practice. *Clarkson* v. *Read*, 15 Gratt. 288. In that case, Clarkson was a purchaser of land sold under a decree of the court, was in default, and it was held that he thereby submitted himself to the jurisdiction of the court in all things connected with that matter. But in this case the appellant, Ogden, was not a purchaser at a judicial sale, but purchased " Pedlar Mills " at a sale made under the trust deed, by Robertson, the trustee, who was not a party to the suit. And, certainly, " Pedlar Mills" was not as much under the control of the court as were the lands, to set aside the conveyance of which, the suit was brought in *Moseley* v. *Cocke, supra.*

The proper remedy for the collection of the purchase money due from and unpaid by Ogden on the property purchased by him at the trustee's sale (the judgments recovered at law on his bonds having proved unavailing), was by a suit in chancery to subject the property itself. The cases of *Nulton* v. *Isaacs*, 30 Gratt. 726, and *Thurman* v. *Morgan, Receiver*, 79 Va. (4 Hansbrough) 367, are cases in point. In the latter case, one Henderlite, as receiver, executed his official bond, and before making report, he died, and Morgan succeeded him. A rule was awarded to compel Henderlite's administrator to report his decedent's action as receiver. He reported that the fund had not come into his hands, and that he could not report Henderlite's action. Accounts having been ordered and taken, a report was made that there was $3,680 due from Henderlite, as receiver. The report was confirmed, and Morgan obtained a rule against Henderlite's administrator and sureties to show cause why a decree should not be entered against them for the said sum. They appeared and moved to quash the rule; but the motion was overruled, and the decree was entered against them.

Upon appeal here, this court, Lewis, P., delivering the opinion, held: That the sureties were not parties to the suit, nor officers of the court, and hence could not be proceeded against by a rule; that their liability, as sureties, could only be enforced by an action on their bond in a common law court, where they could make defence on trial by a jury, and that the decree for the payment of said sum of money, so obtained upon a rule, was a departure from established modes of procedure, and was void.

In *Nulton* v. *Isaacs, supra,* this court held as invalid a judgment against a certain bank, in the hands of a receiver, which had been obtained on a summary rule to show cause, that had been awarded in a chancery suit in which the receiver was appointed. Moncure, P., delivering the court's opinion, said: "The order is void on its face. The defendant is entitled to the benefit of a common-law action in which he can regularly make his defence, and have the benefit of a trial by jury. An order might, no doubt, have been made in that suit for the collection of the debts due the defendant, and liable to the claim of the plaintiff. But such collecting, if it could not be made without legal proceedings, would have to be made by action at common law." And so, in the case under consideration—whilst there was an order for the collection by the commissioner, by suit or otherwise, of the sums of money loaned out by the guardian, and subject to the claim of the ward; and judgment had been recovered at law on Ogden's bonds, executed for the purchase price of "Pedlar Mills," bought by him at the trustee's sale, and not under any decree in this suit in chancery; and while the judgment at law proved unavailing, yet the mere report of these facts by the commissioners did not make Ogden a party to the chancery suit, and did not authorize the summary proceedings against him by rule for a resale; nor could such proceedings render him amenable to a decree

rendered thereon. The remedy was a suit in chancery by the trustee for specific performance of the contract of sale. Therefore the decree of the 18th of October, 1884, in so for as it directs·a sale of "Pedlar Mills," must be reversed and annulled.

DECREE REVERSED.