# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## COMMONWEALTH V. DRAKE AND ALS.

### JANUARY 7th, 1886.

CHANCERY PRACTICE—*Bills—Multifariousness.*—A bill in equity is brought to subject to the lien of the plaintiff's judgment, his debtors' estate alleged to have been fraudulently conveyed to various persons, who are charged with having combined and colluded with the debtor to defraud the plaintiff, and who are all made parties—
HELD :

    The bill is not multifarious. *Almond* v. *Wilson,* 75 Va. 613.

Appeal from decree of circuit court of city of Richmond, rendered December 24, 1884, in a suit wherein the Commonwealth of Virginia, at the relation of J. R. Barksdale, treasurer, complainant, and J. C. Drake, M. M. Davis, J. O. Barham, and Abraham Levy, are defendants.

The object of the suit is to annul the sale made by J. C. Drake of his interest in the firm of Davis, Drake & Co., to M. M. Davis and J. O. Barham, and the sale made by J. C. Drake of his interest in the firm of Levy, Davis & Drake, to M. M. Davis and Abraham Levy, as fraudulent and void, having been, as it is alleged, made by the vendor with the knowledge of the vendees, and upon combination and collusion of them all, to hinder, delay and defraud the complainant and other creditors of the vendor. The defendants did not answer, but Barham and Levy filed their separate demurrers, and Davis & Levy filed their joint demurrer to the bill, on the alleged

ground that it is multifarious, which were joined in by the complainant, and were sustained by the court below, which also dissolved the injunction which had been awarded in the cause, and dismissed the bill. The court said that the bill united in one suit its complaints against Davis, Drake & Co., and Levy, Davis & Drake, instead of proceeding by separate suits against the said firms. From this decree the complainant obtained an appeal to this court.

Opinion states the facts.

*Attorney-General F. S. Blair* and *T. S. Martin* and *Guy & Gilliam*, for the appellant.

*Cannon & Courtney*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

It appears from the record that J. C. Drake, one of the said defendants, was a director of the Planters and Mechanics Bank of Petersburg, Virginia, and a large stockholder thereof. The said bank was designated by the Governor of Virginia as a temporary depository of the public money of the State, and received a large sum of said money, amounting to over $100,000; for the safe-keeping and return of which, the said bank executed its bond to the Commonwealth of Virginia in the sum of $150,000, conditioned according to law, with the said J. C. Drake and others as sureties on the said bond.

The said bank became insolvent, and suspended payment; and by a deed dated May 19, 1884, the directors, acting by the president, conveyed all the assets and property of the said bank to trustees for the benefit of its creditors.

On the 25th day of June, 1884, the Commonwealth of Virginia obtained a judgment in the circuit court of the city of

Richmond against the said J. C. Drake and others, sureties on the said bond, for the sum of $150,000, to be discharged by the payment of $135,373.35, with interest from the 29th day of May, 1884, and $8.23 costs; and had an execution duly issued thereon and placed in the hands of the proper officer for levy.

The said J. C. Drake was, long prior to the rendition of the said judgment, engaged as a partner in business with said Michael M. Davis in the cities of Petersburg and Richmond, Virginia.

Prior to the rendition of the aforesaid judgment against the said J. C. Drake and others in favor of the Commonwealth, and in anticipation thereof; and within four days after the execution of said deed of trust of May 19, 1884, by the said Planters and Mechanics Bank of Petersburg, the said J. C. Drake sold out his interest in the Petersburg business to the said M. M. Davis and J. O. Barham; and his interest in the Richmond business to the said M. M. Davis and Abraham Levy, his partners in the respective firms. Thereupon the Commonwealth instituted this suit in the circuit court of Richmond city, for the purpose of reaching and subjecting the property of the said J. C. Drake to the satisfaction of its judgment aforesaid, and to prevent the said property from being fraudulently secreted and held by the two firms of which the said J. C. Drake had been a member.

The bill alleged that, for a great many years prior to the rendition of the said judgment, the said J. C. Drake had been engaged as a partner in business with the said M. M. Davis; and that for many months prior to the 23d day of May, 1884, the said Drake was doing business in the city of Petersburg as a member of the firm of "Davis, Drake & Co.," composed of the said M. M. Davis, J. C. Drake, J. O. Barham, George I. Morrison, and J. E. Whithorne; and in the city of Richmond,

during the same time, with M. M. Davis and Abraham Levy, under the firm name of "Levy, Davis & Drake." That on the 23d day of May, 1884, the members of the firm of "Davis, Drake & Co." published in the "Index-Appeal," a newspaper published in Petersburg, a notice of dissolution of said firm; appended to which was a notice that J. C. Drake had sold his interest in the assets and property of the said firm, to the aforesaid M. M. Davis and J. O. Barham. That on the same day (23d of May, 1884,) the members of the firm of "Levy, Davis & Drake" published in the "Daily Dispatch," a newspaper published in the city of Richmond, a notice of dissolution of said firm, and the formation of the new firm of "Levy & Davis," composed of said Abraham Levy and M. M. Davis; to which was appended a notice that said J. C. Drake had sold his interest in the books, property and assets of the said firm of "Levy, Davis & Drake," to the said M. M. Davis and Abraham Levy, and that Levy & Davis hold the said interest under said sale.

The bill charges, expressly, that the said sale of the interest of J. C. Drake in the firm of "Davis, Drake & Co." was made with intent to hinder, delay and defraud his creditors (of whom the complainant is one), and that, as against its debt and execution aforesaid, the said sale is fraudulent and void. That the said Michael M. Davis and J. O. Barham well knew of the liability of the said J. C. Drake to the Commonwealth of Virginia (complainant) on the bond aforesaid; and, anticipating a judgment against him on the same, colluded with the said J. C. Drake to conceal and secrete his property for the purpose of preventing its seizure and sale and application to the payment of his debts. That the said M. M. Davis and Abraham Levy well knew of the insolvency of the said Planters and Mechanics Bank, and the liability of the said J. C. Drake on the aforesaid bond for $150,000.00, and anticipated a judgment against him

on the same by the said fraudulent and collusive sale of the interest of the said J. C. Drake in the firm of "Levy, Davis & Drake"; and that they, the said M. M. Davis and Abraham Levy, combined and colluded with the said J. C. Drake in the said sale of his said interest, so that the same could not be reached and subjected to the payment of his debts; and that the said sale was made with intent to hinder, delay and defraud the complainant and his other creditors, and is fraudulent and void as against the debt and execution aforesaid of the complainant, which remains wholly unsatisfied. The bill then proceeds to make the said J. C. Drake, M. M. Davis, J. O. Barham and Abraham Levy, parties defendant to the suit, and prays for answers from the said defendants, general and special, and for proper accounts; and that the aforesaid sales, made by the said J. C. Drake to the said M. M. Davis and J. O. Barham, and to the said M. M. Davis and Abraham Levy, may be set aside as fraudulent and void; and the property and interest of the defendant, J. C. Drake, in the firms of "Davis, Drake & Co." and "Levy, Davis & Drake," be subjected to the payment of the execution aforesaid; and that the said M. M. Davis, J. O. Barham and Abraham Levy may be enjoined and restrained from paying or delivering to the said J. C. Drake, or to any person for him, any part of the consideration for the sales aforesaid, and each of them. Which injunction was awarded, according to the prayer of the bill, by an order of the judge of the hustings court of the city of Petersburg, in vacation, August 12th, 1884.

The said defendants did not answer. But J. O. Barham and Abraham Levy filed their separate demurrers, and M. M. Davis and Abraham Levy filed their joint demurrer to the said bill; and the complainant joined in the said demurrers.

The ground of the said demurrers is *multifariousness* in joining in the one bill several defendants, and two or more separate

and distinct causes of action; and the order of the circuit court
of the city of Richmond appealed from, entered 24th of Decem-
ber, 1884, is that the plaintiff's bill is multifarious, in that it
unites in one suit its complaints against "*Davis, Drake & Co.*"
and "*Levy, Davis & Drake*" (instead of proceeding by separate
suits against said firms), and that the said demurrers should
be sustained; and that the decree entered herein on the 12th
of August, 1884, enjoining and restraining the defendants, M.
M. Davis, J. O. Barham and Abraham Levy, their agents and
attorneys, from paying over, transferring or delivering to J. C.
Drake, or any person for him, any money, bonds, notes, bills,
or other evidences of debt on account of the sales of the interest
of said J. C. Drake in the late firms of "Davis, Drake & Co.,"
and "Levy, Davis & Drake," should be dissolved and set aside,
and the plaintiff's bill dismissed.

The question to be determined by this court in this case is,
whether the circuit court erred in sustaining the demurrers filed
by the several defendants as aforesaid, upon the single ground of
*multifariousness.* The demurrers admit, as true, all the allega-
tions of the bill, which expressly charges fraud, collusion of
fraud, and combination, by and between the defendant, Drake,
and the defendants, Barham and M. M. Davis, in the sale of
the interest of the said J. C. Drake, in the Petersburg business,
and by and between the said Drake and the defendants,
Abraham Levy and M. M. Davis, in the sale of the interest of
the said Drake in the Richmond business, with the intent to
hinder and defraud his judgment creditor, the Commonwealth,
and to cover up and conceal his said property interest from
the reach of his creditors and the subjection of it to the pay-
ment of his debts, which is the object of the bill.

Is the bill, under the circumstances of this case, *multifarious?*
Most certainly it is not; for the only ground or reason predi-
cated in the decree of the circuit court, "in that it unites in

one suit its complaints against Davis, Drake & Co., and Levy, Davis & Drake (instead of proceeding by separate suits against *said firms*"); because the *said firms* (nor neither of them), are not complained of, or made parties defendants to the bill; they are not named as parties, nor is there any prayer for process against them as parties; and they are not called upon to answer the bill, or any fact or statement in the bill. There is no process or proceeding against them, and they have not answered the bill, or appeared in the cause.

The prayer of the bill is, that J. C. Drake, Michael M. Davis and J. O. Barham and Abraham Levy (distinct and separate individuals, associated only in the fraudulent sales), may be made parties defendant to this bill, and be required to answer all the allegations thereof upon their oaths; that the said J. C. Drake, M. M. Davis and J. O. Barham may answer and state, specially, when, where and under what circumstances the sale of the said J. C. Drake's interest in the firm of Davis, Drake & Co. was made, what consideration was paid, or agreed to be paid, for the same, whether it was to be paid, or was paid in currency, checks, bonds, bills, notes, or other evidences of debt or other property; if in coin or currency, where, when and from whom the same was obtained, and in whose presence, when and where paid; if in bonds, bills, notes, checks, or other evidences of debt, that copies of the same may be filed with their answers, and the originals thereof, together with the books of the said firm of Davis, Drake & Co., may be produced at the proper time; that they be required to file, with their several answers, copies of all contracts or agreements relating to said sale, and all receipts, inventories and other papers connected therewith; that said J. C. Drake may state further, exactly what disposition he has made of the consideration received for his interest in said firm of Davis, Drake & Co., whatever it may have been, when, where, how, and to whom

the same has been transferred or paid, and on. what account. That the said J. C. Drake, Michael M. Davis, and Abraham Levy, may answer and state specially what consideration was paid, or agreed to be paid, for the interest of the said J. C. Drake, in the books, property and assets of the said firm of Levy, Davis & Drake, whether currency, coin, checks, bonds, bills, notes, or other evidences of debt or other property; if in coin or currency, when and from whom the same was obtained; if in bonds, checks, notes, bills, or other evidences of debt, that copies of the same, and of all contracts or agreements relating to the same, may be filed with their answers, and the originals thereof, together with the books of the said last-named firm ("Levy, Davis & Drake"), may be produced at the proper time. That the said J. C. Drake may be required further to state what disposition he has made of the consideration received for the sale of his interest as aforesaid in the said books, property and assets of the said firm of Levy, Davis & Drake; when, where, to whom, and in whose presence, and for what consideration he has paid, transferred, or delivered the same, or any part thereof.

The fact appears from the record, that the said alleged sales were made on the same day, and, in each instance, to two former partners, and that M. M. Davis is a purchaser in both sales. In the one sale Barham is said to unite with him, Davis, and in the other, Levy. *Three* of the *four* were necessary parties to each transaction; *two* of the four were parties to both sales.

This record presents the case, in which the *debt is one;* the *debtor is one,* and his property is sought to be reached and subjected to the payment of his debts, in the hands of *several grantees*, who are charged in the bill (and admitted by the demurrer) to have colluded and combined with the fraudulent debtor to conceal his property, and to hinder, delay and defraud

the proper application of his property to the satisfaction of his judgment creditor; and we do not think it is necessary to have *two* suits to subject this one debtor's property, because of the fact that several other persons, or, incidentally, two firms, were implicated in the fraudulent sales and concealment of J. C. Drake's property interest. It is proper for the creditor to pursue the property of its debtor, and to remove all impediments or obstructions in the way of its remedy for the recovery of the property of its debtor, in the hands of the several fraudulent grantees, who are necessary and proper parties defendant to the suit. J. C. Drake is charged in the bill with fraudulently selling his property, or pretending to do so, to several grantees, who, by the demurrer, colluded with him in the purpose and attempt to conceal and secrete the same to hinder, delay and defraud his judgment creditors. In the case of *Fellows* v. *Fellows*, 4 Cow. 682 (cited in 2 Rob., Old Practice, 278), the bill alleged that all the debtor's property had been transferred by him fraudulently, *in parcels*, to *three persons*. The debtor and his three grantees were made defendants. They all demurred to the bill, alleging that they were impleaded together for distinct matters, and each denied combination with the other defendants. The demurrer was overruled, on the ground that there was a general right in the plaintiff covering the whole case. In *Almond* v. *Wilson*, 75 Va., page 613, it was held, that when the bill is against fraudulent alienees, the matter in litigation is *the fraud charged in* the management and disposition of the debtor's property, in which charge all the defendants are interested, though in different degrees and proportions. It is sufficient, if the bill charges a fraudulent combination to hinder and delay creditors in the collection of their debts. A demurrer will not lie, even though the defendants be unconnected with each other, where there is one common interest centering in the point in issue in the

cause. In this case (*Almond* v. *Wilson*), Judge Staples, speaking for the unanimous court, said: "There is no charge of combination and confederacy among the alienees, and the objection is made that the bill is multifarious in uniting several defendants having no privity or connection with each other. It has been well said, if all the parties to a fraudulent transaction cannot be called to account in one suit, it is in the power of a dishonest debtor, by a distribution of his property, in minute portions, among his relations and friends, to defraud his own creditors, and set them at defiance with impunity. If the creditor is required to file a separate bill against each alienee, it will be productive of all the mischief and oppression attending a multiplicity of suits. The inconvenience of uniting all the alienees in one suit will be comparatively trivial; for the court may adapt its decrees to the proofs against each, and apportion the costs as may be just and expedient." Citing Bump on Fraudulent Conveyances, 637, and cases there cited; *Fellows* v. *Fellows*, 4 Cowen, 682; *Brinkerhoff* v. *Brown*, 6 John. Ch. R. 139; *Jones' Executor* v. *Clark*, 25 Gratt. 642; *Boyden* v. *Lancaster*, 2 Patton & Heath, 198. In *Nulton* v. *Isaacs*, 30 Gratt. 726, the demurrants rested their defence upon the ground now assumed by the defendants Barham, Levy and Davis, Nulton protesting "that he had nothing to do with the property conveyed to Sarah Nulton, and by her devised to his co-petitioners; and the other petitioners protesting that they had no interest or concern in the two deeds to Joseph· A. Nulton, or in the settlement of his partnership accounts with his father." And the unanimous court held that the bill was *not multifarious*. In that case the complainants, William B. Isaacs & Co., claimed to be creditors of Abraham Nulton, under assignments to them of several of his notes by the Valley Bank of Virginia and the Farmers Bank of Virginia; and they brought their suit to enforce the payment of their claim out of the

estate of their debtor.   He had little or no personal estate, and
all his real estate he had conveyed to and for the use of his
wife, Sarah Nulton, and his son, Joseph A. Nulton; which
conveyances were charged by the said creditors (in their bill)
to be voluntary and fraudulent, and void as to his creditors,
and especially the complainants.   The court says: "They, there-
fore, sought, by their said suit, to remove those obstructions out
of their way, without which they could not possibly obtain
satisfaction of their claims; and for that purpose they had
necessarily to make, not only the administrator of Abraham
Nulton, but also the claimants under the alleged fraudulent
conveyances, defendants to the bill; and, as Joseph A. Nulton
claimed to have become the purchaser of the property conveyed
to him by his father, the said Abraham Nulton, by means of
a balance alleged to have been due to him on a settlement of
a partnership account between them, the complainants prayed
in their bill that the defendant, Joseph A. Nulton, might
"make a complete discovery of the consideration upon which
the two deeds to him were based; and, if essential to the
proper understanding of the same, that his account as late
partner of the decedent may be settled.   We think that all
the persons made defendants to the suit were proper and
necessary parties, and that the conditional prayer for a set-
tlement of the partnership account was proper and unobjection-
able, if not necessary."

Another exception to the general doctrine respecting multi-
fariousness and misjoinder is "the joining of several judgment
creditors in one bill against their common debtor and his
grantees to remove impediments to their remedy created by
the fraud of their debtor in conveying his property to several
grantees, although they take by separate conveyances, and no
joint fraud, in any one transaction, is charged against them all.
In such a case (it is said) the fraud equally affects all the plain-

tiffs, and they may jointly sue; and all the defendants are implicated in it in different degrees and proportions, and therefore are properly liable to be jointly sued." Story's Eq. Pl., sections 285, 286. (See also 30 Gratt. 738; *Boyd & Snyder* v. *Hoyt & P.*, 5 Paige, 65; *Ambler* v. *Warwick & Co.*, 1 Leigh, 215; *Gaines & Wife* v. *Chew, &c.*, 2 Howard, 619; Story's Eq. Pleadings, section 271.)

Applying the reasoning used in these cases to the case under review, we are of opinion that the circuit court erred in the decree complained of in sustaining the demurrers, and in dissolving the injunction granted on the 12th August, 1884, and in dismissing the bill of complaint; and the same must therefore be wholly reversed and annulled, and the case remanded to the said circuit court of the city of Richmond, with instructions to reinstate the said injunction and the bill of complaint, and to proceed in the cause according to the views herein expressed.

DECREE REVERSED.